**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

UNITED STATES OF AMERICA

v.                                                CASE NO. 1:24-CR-22-HAB-ALT

CHRISTOPHER KOOGLER

**OPINION AND ORDER**

Defendant Christopher Koogler ("Koogler") pleaded guilty to two criminal counts: one for distribution of child sex abuse material ("CSAM") ("Count 1") and one for possession of CSAM ("Count 2"). (ECF 42, 45). The United States Probation Office ("Probation") prepared a presentence investigation report ("PSR") ahead of Koogler's sentencing. The PSR calculated Koogler's adjusted offense level to be 36. (ECF 64, ¶¶ 38–53). To get there, Koogler was assessed a base offense level of 22, followed by 5 enhancements that added a combined 17 points, and 2 reductions for accepting responsibility that subtracted 3 points total. (*Id.*).

Koogler now objects to the applicability of two four-level enhancements: one under U.S.S.G. § 2G2.2(b)(7)(C) for possessing 300-600 images and another under U.S.S.G. § 2G2.2(b)(4) for possessing images depicting sadism and/or masochism ("S&M"), violence, sexual abuse, or exploitation of an infant or toddler. (ECF 62, 71). Both stem from conduct charged in Count 2. But because Koogler's two counts are grouped together for calculating his Sentencing Guideline range, and the calculations are done from Count 1's base offense level, he argues that the images behind the enhancements are not part of the same "offense" as Count 1. (ECF 67, 71). Because they are, Koogler's objections will be OVERRULED.

## **BACKGROUND**

In October 2023, Fort Wayne law enforcement received a referral from an international task force that an individual in the city had sent messages on a platform called Wickr containing CSAM images and discussions of child abuse. (ECF 64, ¶¶ 4–17). The individual sent several messages in Wickr groups between August and September of that year offering to trade CSAM images in private chats. (*Id.* ¶¶ 12, 14, 16). In all, the individual distributed five CSAM images in these groups, along with nude images of an adult female and non-CSAM images of minors. (*Id.* ¶¶ 5, 7–16). Data from the images depicting an adult female revealed that they were taken on a cell phone at an address in Fort Wayne. (*Id.* ¶ 6). BMV records and subsequent investigation revealed this address belonged to Koogler's wife, that she was the adult female in those images, and that the non-CSAM images of minors that were sent depicted Koogler's stepdaughters. (*Id.* ¶¶ 6, 18). The photos of the stepdaughters were also taken on the same cell phone at the same address. (*Id.* ¶ 17).

Based on this information, law enforcement executed a search warrant at the Fort Wayne address. (*Id.* ¶ 19). Koogler agreed to speak with law enforcement after being advised of his Miranda rights. (*Id.*). He admitted that although he deleted Wickr in September, he owned the Wickr account at issue and sent the five CSAM images in groups. (*Id.* ¶¶ 20–22). These sent images form the basis for Count 1 against Koogler, which charged him for distributing CSAM in violation of 18 U.S.C. § 2252 (a)(2)(A) and (b)(1).

A subsequent search of Koogler's cell phone, from which at least some of the Wickr messages were sent, revealed 455 unique CSAM images. (*Id.* ¶ 23). Eight of these images contained S&M or violence. (*Id.* ¶ 24). Others depicted prepubescent minors under 12 years old, including abuse or exploitation of infants or toddlers. (*Id.* ¶ 25). These 455 additional images found

on his phone form the basis for Count 2, which charged him for possessing CSAM in violation of 18 U.S.C. § 2252 (a)(5)(B) and (b)(2). Across his devices, law enforcement eventually found 513 CSAM images, 486 of which were unique. (*Id.* ¶ 28).

On August 6, 2025, Koogler pleaded guilty to Counts 1 and 2 without a plea agreement. (ECF 42). The Draft PSR calculated the advisory guidelines. (ECF 48). Under the Sentencing Guidelines, both Counts 1 and 2 are indexed at U.S.S.G. § 2G2.2. The base offense level for Count 1 is 22. U.S.S.G. § 2G2.2(a)(2). The base offense level for Count 2 is 18. U.S.S.G. § 2G2.2(a)(1). Under U.S.S.G. § 3D1.2(d), these counts are grouped together and the offense level for Count 1 is used because it results in the highest offense level. (ECF 48, ¶ 31). The PSR applied the following five enhancements to Koogler's base offense level:

- 2 points for CSAM involving a prepubescent minor under 12 years of age, under U.S.S.G. §2G2.2(b)(2);
- 2 points for using a computer for the possession, transmission, receipt, or distribution of CSAM with intent to view it, under U.S.S.G. § 2G2.2(b)(6);
- 4 points for an offense involving 300-600 CSAM images, under U.S.S.G. § 2G2.2(b)(7)(C);
- 4 points for CSAM depicting S&M, violence, sexual abuse, or exploitation of an infant or toddler, under U.S.S.G. § 2G2.2(b)(4); and
- 5 points for distributing CSAM in exchange for any valuable consideration, under U.S.S.G. § 2G2.2(b)(3)(B).

(*Id.* ¶¶ 40–45).

These enhancements result in an adjusted offense level of 39. (*Id.* ¶ 49). Koogler also received three points of reductions for accepting responsibility, leading to a total offense level of 36. (*Id.* ¶¶ 51–53).

Koogler made four objections to the Draft PSR, all of which Probation resolved in the government's favor in an addendum to the Final PSR. (ECF 62, 64, 65). The government also objected to the application of a $5,000 special assessment under 18 U.S.C. § 3014, and the parties have agreed that it will not apply in this case. (ECF 63, 65). After Probation filed the Final PSR,

3

Koogler maintains his objections to two four-point enhancements:[1] one for an "offense" involving 300-600 CSAM images and one for an "offense" involving possession of CSAM depicting S&M, violence, sexual abuse, or exploitation of an infant or toddler. (ECF 65). Those objections have now been fully briefed and are ripe for ruling. (ECF 67, 71).

## **DISCUSSION**

The four-point enhancements under U.S.S.G. §§ 2G2.2(b)(7)(C) and (b)(4) that Koogler challenges apply to the conduct pertaining to Count 2 (possession of the additional 455 CSAM images). Koogler argues that because the PSR sets the base offense level from Count 1, these enhancements are not part of the same "offense" and cannot be included in the guideline calculations. The Court disagrees.

The Sentencing Guidelines define "offense" to mean "the offense of conviction *and all relevant conduct under § 1B1.3*." U.S.S.G. § 1B1.1 (emphasis added). U.S.S.G. § 1B1.3 defines relevant conduct and further explains what it entails in specific scenarios. When calculating a defendant's guideline range in a case with grouping of multiple counts, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A), (a)(2). The commentary to the Sentencing Guidelines defines a "common scheme or plan" as "two or more offenses . . . substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.* § 1B1.3 cmt. n.5(B)(i). Even if two or more offenses are not part of a "common scheme or plan," they "may nonetheless

---

[1] Koogler had a third continuing objection to the applicability of the five-level enhancement for distribution in exchange for valuable consideration under U.S.S.G. § 2G2.2(b)(3)(B). (ECF 62). But he withdrew this objection in his response brief. (ECF 71, at 4).

qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii).

While this definition of relevant conduct is broad, it is "not boundless," and courts cannot "sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct." *United States v. Nance*, 611 F.3d 409, 416 (7th Cir. 2010).

Here, the conduct underlying Count 2 is undeniably relevant to Count 1. Koogler sent messages and images on Wickr from the same cell phone where police found the 455 CSAM images. He necessarily possessed or acquired 455 images at around the same time he sent the messages and images on Wickr. Koogler sent the five CSAM images in August and the search occurred in October. Further, many of Koogler's Wickr messages proposed trading CSAM images. At a minimum, this demonstrates a continuous, multifaceted engagement in the illegal online marketplace for CSAM. The Court also finds that Koogler distributed and possessed CSAM for the common purpose of acquiring CSAM for his own gratification. Thus, the enhancements that stem from Count 2 conduct are relevant to Count 1 and apply to Koogler.

Koogler offers no case law in support of his position. He only tries to distinguish his case from those cited by the government in support of the enhancement: *United States v. Ellison*, 113 F.3d 77 (7th Cir. 1997), and *United States v. Nance*, 611 F.3d 409 (7th Cir. 2010), and *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). None of these attempts are persuasive.

*Ellison* in particular instructs and binds this Court. That case involved a man ensnared in a sting operation for buying a CSAM videotape through the mail. 113 F.3d at 78. Law enforcement found the videotape when they searched Ellison's home, but they also discovered several magazines depicting "prepubescent boys engaged in sadistic and masochistic acts." *Id.* at 79. After

5

being charged with two counts for receipt and possession of CSAM, Ellison pleaded guilty to the receipt count in exchange for the government dropping the possession count. *Id.* The district court applied several enhancements when calculating Ellison's guideline range, including the same enhancement for S&M under U.S.S.G. §§ 2G2.2 (b)(4)[2] that Koogler challenges here. *Id.* On appeal, the Seventh Circuit affirmed the application of the enhancement and rejected the same argument Koogler makes here. *Id.* at 82–83. That court reached this conclusion because "[f]ar from being unrelated, both Ellison's receipt and his possession of child pornographic materials violate the same criminal statute and indicate his dangerous propensities in the realm of sexual exploitation of minors." *Id.* at 83.

*Nance* similarly affirmed an enhancement when faced with the same arguments made by the defendant contesting similar enhancements for a CSAM video he possessed at the time of arrest but was not charged for. 611 F.3d at 416–17.[3]

Despite these holdings in *Ellison* and *Nance*, Koogler insists his case is distinct. He asserts that because he deleted the Wickr account in September, he had abandoned his means of distribution and thus insufficient evidence exists to link the possessed items to the distribution. This distinction is meaningless. The magazines in *Ellison* were unrelated to the videotape he received, but the enhancement still applied. 113 F.3d at 78, 82. No one knew when the defendant downloaded the uncharged video in *Nance*, but the enhancement still applied there too. 611 F.3d at 410, 415–16. Here, like in those two cases, Koogler possessed the 455 images contemporaneous

---

[2] Back then it was U.S.S.G. §§ 2G2.2 (b)(3). *See id.*

[3] *Dorvee*, which does not bind this Court, merely held that it was not plain error for the district court to apply enhancements for uncharged images. 616 F.3d at 180. Koogler argues *Dorvee*'s narrow holding that the enhancement's application was not error does not necessarily mean the enhancements are proper here. In this limited sense, Koogler is correct. But this hair-splitting does not change the fact that the enhancements here encompass conduct relevant to Count 1.

to his distribution of the other 5. Even in the most attenuated timeline, less than two months passed between when he sent the 5 images and when he possessed the rest. And more importantly, the conduct at issue here is charged conduct. Unlike the other cases, Koogler pleaded guilty to possession in Count 2.

In sum, the Court finds that the four-point enhancements under U.S.S.G. §§ 2G2.2(b)(7)(C) and (b)(4) both properly apply because Koogler's possession of the 455 additional images, including the S&M images, is relevant to his distribution offense.

## **CONCLUSION**

Koogler's objections (ECF 62) are OVERRULED. Sentencing will be scheduled by separate entry.

**SO ORDERED** on July 30, 2026.

s/ *Holly A. Brady*

CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

7